IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| HEATHER ELIZABETH GODWIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:22-CV-1263-RP |
| | § | |
| GLYN J. GODWIN, GERARD RUTH, | § | |
| CHARLES GARDNER, TRACY | § | |
| WALTER ROGERS, MARY | § | |
| SANCHEZ, KELLY COLLENBORN, | § | |
| MARTHON GIMRE, JOSEPH | § | |
| BRUNO, SR., REED | § | |
| TECKENBROCK, A MISSION FOR | § | |
| MICHAEL, OFFICER JOHN DOE, | § | |
| KINGS CROSS VENTURES *d/b/a* | § | |
| BIRRAPORETTI'S, INC., RONNIE | § | |
| BALDO, DAVID SHADLE *d/b/a* | § | |
| WITHAM APARTMENTS, JOE DOE, | § | |
| JANE MCFARLAND, SONNY | § | |
| MCFARLAND, HI ONE AUSTIN LLC | § | |
| *d/b/a* HABITAT SUITES, INC., | § | |
| FOREST COOK, CPF RIVER OAKS | § | |
| AUSTIN, L.L.C. *d/b/a* THE PARK ON | § | |
| BRODIE LANE, and KEVIN | § | |
| WALTER, | § | |
| | § | |
| Defendants. | § | |

**<u>ORDER</u>**

Before the Court are seven motions to dismiss Plaintiff Heather Godwin's ("Plaintiff")

Fourth Amended Complaint, respectively filed by Defendants Reed Teckenbrock, (Dkt. 33); CPF

River Oaks Austin, LLC ("River Oaks"), (Dkt. 34); Gerard Ruth, (Dkt. 47); A Mission for Michael

("Mission"), (Dkt. 54); Ronnie Baldo, (Dkt. 93); Jane McFarland, Sonny McFarland, Tracy Walter

Rogers, and Mary Sanchez, (Dkt. 95); and Kelly Collenborne[1] (Dkt. 98). Plaintiff filed responses

---

[1] The correct spelling of Collenborne's last name appears to be with an "e" at the end. (*See* Dkt. 90, at 2).

opposing six of Defendants' respective motions, (Dkts. 40, 89[2], 43, 61, 99). Plaintiff did not respond

to Defendant Mission's motion to dismiss, (Dkt. 54). Two Defendants filed replies to Plaintiff's

responses to their motions to dismiss: Reed Teckenbrock, (Dkt. 44), and River Oaks, (Dkt. 46).

Plaintiff also moved to strike Defendant Teckenbrock's reply and moved for sanctions against him,

(Dkt. 57), to which Defendant Teckenbrock filed a response, (Dkt. 59).

Also before the Court is Defendant HI One Austin Limited's ("Habitat") motion for

summary judgment, (Dkt. 75), Plaintiff's response to that motion, (Dkt. 77), and Habitat's reply,

(Dkt. 91).

Also before the Court are two motions by Plaintiff to extend time for service, on Defendant

Charles Gardner, (Dkt. 56), and on Defendants Jane and Sonny McFarland, (Dkt. 88). Plaintiff also

moved for leave to file a Fifth Amended Complaint, (Dkt. 82), and a Sixth Amended Complaint,

(Dkt. 109). Defendants Teckenbrock, (Dkt. 82), and Baldo, (Dkt. 106), filed responses to Plaintiff's

motion to file a Fifth Amended Complaint.

Having considered the parties' briefing, the record, and the relevant law, the Court issues the

following order.[3]

## I. BACKGROUND

Plaintiff, a licensed Texas attorney, commenced this *pro se* lawsuit on December 1, 2022.

(Dkt. 1).[4] She asserts claims on her own behalf against twenty-one defendants for violations of 18

---

[2] Plaintiff filed two responses to Defendant Teckenbrock's Motion to Dismiss, (Dkt. 33), on March 31, 2023, (Dkt. 40), and on June 19, 2023, (Dkt. 89). Plaintiff's second response is redundant, and she did not move to filed an amended response. Accordingly, the Court **STRIKES** Plaintiff's second response to Defendant Teckenbrock's Motion to Dismiss, (Dkt. 89).

[3] On January 22, 2024, Plaintiff filed a Notice of Nonsuit/Motion to Dismiss. (Dkt. 111). Plaintiff states that "this matter is currently pending in State Court." (*Id.* at 1). There is no nonsuit under the Federal Rules of Civil Procedure. Additionally, Plaintiff's motion to dismiss contains no argument and has not yet been responded to. Accordingly, the Court does not consider this motion in its order.

[4] After filing her original complaint, (Dkt. 1), Plaintiff then filed successive amended complaints on December 5, December 7, and December 12, 2022, (Dkts. 3, 5, 7). On March 6, 2023, having received leave

U.S.C. § 1591 and for civil liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Against certain defendants, she also asserts claims for negligence.

Plaintiff's allegations are expansive in scope. The complaint states that, beginning in 1989, Plaintiff was defrauded into a "contract for surveillance for protection" by Defendants Glyn J. Godwin (Plaintiff's father), Gerard Ruth (her former fiancée), and Charles Gardner (a family friend). (Compl., Dkt. 26, at ¶¶ 31–32).  She states that, at that time, Defendant Godwin was in financial trouble and to pay the debt "he agreed to a venture to defraud Plaintiff into commercial sex acts of pornography." (*Id.* at ¶ 61). The complaint alleges that, over the next 33 years, other named defendants, either individually or as part of an enterprise, continued to "defraud Plaintiff into commercial sex acts in violation of 18 U.S.C. § 1591" until she escaped the enterprise in June 2022. (*Id.* at ¶¶ 26–56). As explained in further detail below, Defendants include a diverse group of Plaintiff's current or former family members, acquaintances, landlords, and other businesses.

## A.  Allegations and Claims against Defendant Glyn Godwin

The complaint states that, in 1990, Defendant Gerard Ruth colluded with Defendant Glyn Godwin to entice Plaintiff into a contract for "protection" through means of surveillance. (Compl., Dkt. 26, at ¶ 29). Plaintiff alleges she was led to believe the surveillance contract was intended to ensure her security and protection while Ruth was deployed overseas, but she later discovered it was a ruse to secretly record her without consent. (*Id.* at ¶ 71). Plaintiff also alleges that in 1989, Defendant Godwin placed a hidden camera behind a mirror in Plaintiff's bedroom and secretly recorded her. (*Id.* at ¶ 28). Plaintiff also alleges that Defendant Godwin "psychologically abused

---

from this Court, Plaintiff filed her Fourth Amended Complaint, ("Compl.", Dkt. 26), the operative complaint in this action. This Order cites allegations from the operative complaint. On January 22, 2024, Plaintiff filed a Notice of Nonsuit/Motion to Dismiss. (Dkt. 111). Rule 41(a)(1)(A)(i) allows a plaintiff to voluntarily dismiss an action without a court order by filing a notice of dismissal before the opposing party serves an answer or a motion for summary judgment. Fed. R. Civ. P. 41(a)(1)(A)(i). Defendants have served answers or motions for summary judgment. Plaintiff's notice is therefore ineffective.

Plaintiff online generally until she blocked him and then he assumed his wife's identity online and continued to abuse her." (*Id.* at ¶ 37, 39). On this basis, Plaintiff brings claims against Defendant Godwin for: (1) "defraud[ing her] into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591, (*id.* at ¶¶ 28, 39); and (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud, (*id.* at ¶¶ 60–61, 69, 71).

### B. Allegations and Claims against Defendant Gerard Ruth

The complaint states that, in 1990, Defendant Gerard Ruth colluded with Defendant Glyn Godwin to entice Plaintiff into a contract for "'protection'" through means of surveillance. (Compl., Dkt. 26, at ¶ 29). Plaintiff alleges she was led to believe the surveillance contract was intended to ensure her security and protection while Ruth was deployed overseas, but she later discovered it was a ruse to secretly record her without consent. (*Id.* at ¶ 71). Plaintiff also alleges that Ruth, at an unspecified time and place, "among unknown others psychologically abused Plaintiff on social media to coerce Plaintiff" into commercial sex acts. (*Id.* at ¶ 39). In 2015, Ruth allegedly posted online that Plaintiff was "bananas." (*Id.* at ¶ 36). On this basis, Plaintiff brings claims against Ruth for: (1) "defrauding her into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591, (*id.* at ¶ 30); and (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud, (*id.* at ¶ 61).

### C. Allegations and Claims Against Defendant Charles Gardner

Plaintiff alleges that, beginning in 1989, she was defrauded into a "contract for surveillance for protection" by Defendants Glyn Godwin (Plaintiff's father), Gerard Ruth (her former fiancée), and Charles Gardner (a family friend). (Compl., Dkt. 26, at ¶¶ 31–32). Plaintiff alleges that "Defendant Kings Cross Ventures d/b/a Birraporetti's, Inc., is a restaurant now owned in part by Charles Gardner and the location where the contract for surveillance took place." (*Id.* at ¶¶ 32, 64).

Plaintiff alleges that Gardner was present at the restaurant when she met with Defendant Ruth about the alleged surveillance contract and that she "asked if the surveillance would be in her bedroom and bathroom and Gerard Ruth and Charles Gardner told her no." (*Id.* at ¶ 31). Plaintiff also alleges that "Gardner produced the contract and pen for Plaintiff to sign it." (*Id.*). Plaintiff further alleges that "Gardner bullied Plaintiff online." (*Id.* at ¶¶ 35, 39). On this basis, Plaintiff brings claims against Gardner for: (1) "defraud[ing her] into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591, (*id.* at ¶¶ 31, 35, 39); and (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud, (*id.* at ¶¶ 63, 67, 71).

### D.  Allegations and Claims against Defendant Ronnie Baldo

The complaint states that Plaintiff met Defendant Ronnie Baldo in 1992. (Compl., Dkt. 26, at ¶ 65). Plaintiff alleges, without any factual support, that she "believes Defendant [Baldo] defrauded Plaintiff into commercial sex acts of pornography in exchange for a lighter sentence[]" for his previous arrest on drug charges that occurred before they met. (*Id.*). Plaintiff also alleges she and Defendant Baldo were married from 1994 to 2006 and have one child "who has cut off contact with her as a result of the enterprise." (*Id.*). On this basis, Plaintiff brings claims against Baldo for: (1) "defraud[ing] and coerc[ing] Plaintiff into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591; and (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud. (*Id.*).

### E.  Allegations and Claims against Defendant A Mission for Michael

The complaint alleges that Defendant Mission is a rehabilitation facility located in California at which Plaintiff sought treatment for post-traumatic stress disorder in 2019. (Compl., Dkt. 26, at ¶ 97). Plaintiff  states that Mission had a duty not to interfere with her "use and enjoyment of the leased premises" but breached that duty and filmed pornography of plaintiff without her knowledge

and distributed the film via interstate commerce. (*Id.*). On this basis, Plaintiff brings claims against

Mission for: (1) "defraud[ing] and coerc[ing] Plaintiff into commercial sex acts of pornography" in

violation of 18 U.S.C. § 1591; (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591

violations; and (3) negligence. (*Id.* at ¶¶ 51, 83, 97).

### F.  Allegations and Claims against Landlord Defendants

#### 1.  <u>Defendants Jane McFarland, Sonny McFarland, Tracy Rogers, and Mary Sanchez</u>

Plaintiff contends that she met Sonny McFarland, Jane McFarland, and Tracy Rogers at a

mutual friend's party in 2016. (Compl., Dkt. 26, at ¶¶ 43, 75). After informing them that she had

been "defrauded into a contract and men had been recording her in her homes since 1990," Plaintiff

alleges that Jane McFarland offered to let Plaintiff live in her guest house. (*Id.* at ¶ 75). Subsequently,

Rogers allegedly introduced Plaintiff to Defendant Mary Sanchez, who was looking to find a tenant

to lease her home in Lockhart. (*Id.*). Plaintiff further alleges that when she asked Defendants if she

would be filmed at the home, they said "no." (*Id.* at ¶ 76). After Plaintiff began living in Ms.

Sanchez's home, she alleges that "holes appeared in the ceiling" and that she found "AV wires from

ceiling fixture to ceiling fixture." (*Id.*). Shortly thereafter, Defendant Sanchez issued Plaintiff a notice

to vacate and allegedly "left dead raccoons in the attic." (*Id.*). Plaintiff also alleges that Sanchez "had

a duty not to interfere with Plaintiff's use and enjoyment of the leased premises but breached that

duty and filmed pornography of plaintiff without her knowledge and distributed the film via

interstate commerce." (*Id.* at ¶ 93). On this basis, Plaintiff brings claims against all four Defendants

for (1) "defraud[ing] and coerc[ing] Plaintiff into commercial sex acts of pornography" in violation

of 18 U.S.C. § 1591; and (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591

violations and wire fraud. (*Id.* at ¶¶ 43, 75, 92–93). She brings separate claims against Sanchez and

Jane McFarland for negligence. (*Id.*).

### 2.   Defendant Kelly Collenborne

The complaint alleges that Collenborne was Plaintiff's neighbor in a duplex she rented in 2018. Plaintiff states that, when she moved in, Collenborne "brought [her] a blue glass fleur de lis platter as a housewarming gift but took it back when Plaintiff began discussing the video recording." (Compl., Dkt. 26, at ¶¶ 47, 79). Plaintiff states that the attic in her unit was locked, and that she used a "camera detector" to determine a recording device was implanted in her ceiling fan at the duplex unit, and further alleges she was bullied online by unnamed persons who stated that the "detector is a scam." (*Id.*) On this basis, Plaintiff brings claims against Collenborne for: (1) "defraud[ing] Plaintiff into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591; and (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations. (*Id.* at ¶ 79).

### 3.   Defendant HI One Austin, LLC d/b/a Habitat Suites, Inc.

The complaint states that, in mid-2018, Plaintiff rented a room from Habitat in Austin. (Compl., Dkt. 26, at ¶ 45). Plaintiff claims that "[h]oles appeared in the ceiling which provided access for the procurement of video of Plaintiff." (*Id.*) She claims that when she reported the incident to Habitat, "nothing was done about it," so she filled the holes with toothpaste. (*Id.*). Plaintiff also claims that Habitat "implied a warranty of habitability" and "had a duty not to interfere with Plaintiff's use and enjoyment of the leased premises but breached that duty and filmed pornography of plaintiff without her knowledge and distributed the film via interstate commerce." (*Id.* at ¶ 94). On this basis, Plaintiff brings claims against Habitat for: (1) "defraud[ing] Plaintiff into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591; (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud; and (3) negligence. (*Id.* at ¶¶ 45, 77, 94).

7

4.    Defendant CPF River Oaks Austin, LLC

The complaint states that, in 2020, Plaintiff rented an apartment from Defendant River Oaks in Austin. (Compl., Dkt. 26, at ¶ 52). She alleges that River Oaks "is now trying to collect over $6000.00 for breaking the lease," since she "escaped" from the sex-trafficking enterprise in June 2022. (*Id.* at ¶ 55). She also states that River Oaks had a duty not to interfere with her "use and enjoyment of the leased premises" but breached that duty and filmed pornography of Plaintiff without her knowledge and distributed the film via interstate commerce. (*Id.* at ¶ 98). On this basis, Plaintiff brings claims against River Oaks for: (1) "defraud[ing] Plaintiff into commercial sex acts of pornography and distribut[ing] the film via interstate commerce" in violation of 18 U.S.C. § 1591; (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud; and (3) negligence. (*Id.* at ¶ 98).

**G.    Allegations and Claims against Attorney Defendants**

1.    Defendant Reed Teckenbrock

The complaint states that, in April 2022, Plaintiff contacted Teckenbrock, an attorney, to seek legal services regarding the alleged sex-trafficking violations at issue in this lawsuit. (Compl., Dkt. 26, at ¶ 99). Teckenbrock allegedly "told Plaintiff he would look into it and get back to her." (*Id.*). Afterward, he allegedly "sent her an email with case law supporting Defendants' contention that the Plaintiff consented to the commercial sex acts of pornography and that she would be subject to a defamation claim if she proceeded with filing suit." (*Id.*). Subsequently, Plaintiff alleges that "he ceased any contact with her." (*Id.*). The complaint claims Teckenbrock "knew or should have known that Plaintiff was a victim of trafficking," that he "had a duty to plaintiff to provide the standard of care expected in an attorney/client relationship," and that "his failure to provide the

ethical and professional standard of care" caused Plaintiff damages. (*Id.*). On this basis, Plaintiff brings claims against Teckenbrock for negligence. (*Id.*).

### 2. Defendant Joseph Bruno, Sr.

The complaint states that, in 2019, Plaintiff called Bruno, an attorney, "for help escaping the contract and suing for damages." (Compl., Dkt. 26, at ¶ 50). Bruno allegedly called her back and declined to help her pursue any claims. (*Id.*). In 2022, Plaintiff again called Bruno "for help pursuing this claim and stopping the hacking," and was told that he "didn't know what she was talking about." (*Id.* at ¶ 88). The complaint claims Bruno "knew or should have known that Plaintiff was a victim of trafficking," that he "had a duty to plaintiff to provide the standard of care expected in an attorney/client relationship," and that "his failure to provide the ethical and professional standard of care" caused Plaintiff damages. (*Id.* at ¶ 96). On this basis, Plaintiff brings claims against Bruno for (1) "coerc[ing] Plaintiff into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591; (2) civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud; and (3) negligence. (*Id.* at ¶¶ 50, 88, 96).

### H. Allegations and Claims Against Defendant Kings Cross Ventures *d/b/a* Birraporetti's, Inc.

Plaintiff alleges that, beginning in 1989, she was defrauded into a "contract for surveillance for protection" by Defendants Glyn Godwin (Plaintiff's father), Gerard Ruth (her former fiancée), and Charles Gardner (a family friend). (Compl., Dkt. 26, at ¶¶ 31–32). Plaintiff alleges that "Defendant Kings Cross Ventures d/b/a Birraporetti's, Inc., is a restaurant now owned in part by Charles Gardner and the location where the contract for surveillance took place." (*Id.* at ¶¶ 32, 64). On this basis, Plaintiff appears to bring claims against Birraporetti's for (1) violations of 18 U.S.C. § 1591; and (2) civil RICO liability. (*Id.*).

## II. PLAINTIFF'S MOTIONS FOR EXTENSION OF TIME FOR SERVICE

Plaintiff filed her Fourth Amended Complaint, (Compl., Dkt. 26), on March 6, 2023. Under Rule 4(m), a defendant ordinarily should be "served within 90 days after the complaint is filed," meaning that Plaintiff's deadline to effectuate service of the Fourth Amended Complaint was June 4, 2023. Fed. R. Civ. P. 4(m).

On April 11, 2023, Plaintiff moved for alternative service on Defendant Charles Gardner. (Dkt. 45). On April 24, 2023, Plaintiff moved to extend the time for service on Defendant Gardner until 14 days after the Court ruled on her motion for alternative service on Defendant Gardner. (Dkt. 56). On May 11, 2023, the Court granted Plaintiff's motion for alternative service, (Dkt. 45), on Defendant Charles Gardner. (Dkt. 72). Plaintiff has represented to the Court that Defendant Gardner was served on May 14, 2023. (Dkt. 76). Because Defendant Gardner was timely served before June 4, 2023, Plaintiff's motion to extend the time to serve Defendant Gardner, (Dkt. 56), is moot.

On June 19, 2023, Plaintiff moved to extend time for service on Defendants Jane and Sonny McFarland by two days, from June 4, 2023 to June 6, 2023. (Dkt. 88). Plaintiff represented that Defendants Jane and Sonny McFarland were served on June 6, 2023. (Dkts. 86, 87). Because Defendants Jane and Sonny McFarland were served within two days of Plaintiff's deadline under Rule 4(m) and they moved to dismiss, (Dkt. 95), Plaintiff's motion to extend the time to serve Defendants Jane and Sonny McFarland, (Dkt. 88), is moot.

## III. A NOTE ABOUT *PRO SE* PLAINTIFF'S RESPONSES

### A. Legal Standard When the *Pro Se* Plaintiff is a Lawyer

A plaintiff proceeding *pro se* is normally entitled to liberal construction of her submissions in federal court. *Erikson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation omitted); *Haines v. Kerner*,

404 U.S. 519, 520 (1972). In addition, the court should "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quotation omitted). However, these principles do not apply when the *pro se* plaintiff is a licensed attorney, as here. *See Olivares v. Martin*, 555 F.2d 1192, 1194 n.1 (5th Cir. 1977) (declining to give a pro se litigant the "liberal construction of his complaint normally given [to] pro se litigants" because he was a licensed attorney).

## B. Legal Standard Regarding Timeliness of Responses

The Court may consider dispositive motions to be unopposed if the opposing party fails to timely respond. *See* Loc. R. W. D. Tex. CV-7(e)(2) (requiring an opposing party to respond to a dispositive motion within 14 days and allowing the district court to grant a motion as unopposed if no timely response is filed); *see also Kitchen v. BASF*, No. 18-41119, 2020 WL 964371, at *4 (5th Cir. Feb. 28, 2020) (citing *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 161 (5th Cir. 2006)) ("[A] district court has discretion to refuse to accept a party's dilatory response to a motion for summary judgment, even if the court acknowledges reading the response, and has discretion to deny extending the deadline when no excusable neglect is shown."); *Alston v. Mississippi Dep't of Transportation*, No. 19-60583, 2020 WL 747222, at *2 (5th Cir. Feb. 13, 2020) (quoting *Shepherd v. City of Shreveport*, 920 F.3d 278, 288 (5th Cir. 2019)) ("District courts must have the power to control their dockets by holding litigants to a schedule."). However, the Court acknowledges the Fifth Circuit's reluctance to dispose of a cause of action simply for failure to comply with a response deadline imposed by the local rules. *See Johnson v. Pettiford*, 442 F.3d 917, 918 (5th Cir. 2006) (noting disapproval of an automatic grant of a dispositive motion for failure to comply with local rules). Out of an abundance of caution, the Court will consider whether the requested relief is warranted in the motions at issue

11

herein, notwithstanding the fact that some of Plaintiff's responses were not timely filed—or filed at all.

## IV. DEFENDANT MISSION'S MOTION TO DISMISS UNDER RULE 12(b)(2)

The Court will first address Defendant Mission's motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2). (Dkt. 54).[5] Plaintiff did not respond to Defendant Mission's motion to dismiss.

### A.  Legal Standard: Rule 12(b)(2)

When a defendant challenges personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of "mak[ing] a prima facie showing that personal jurisdiction is proper." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014) (internal citation omitted). The Court "must accept the plaintiff's uncontroverted allegations, and resolve in [her] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.* at 431. Nevertheless, a court need not credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001) (*per curiam*).

### B.  Discussion: The Court Lacks Personal Jurisdiction Over Defendant Mission

Plaintiff does not allege that Defendant Mission is a Texas resident. (*See* Compl., Dkt. 26, at ¶ 25 ("Defendant A Mission for Michael is a Rehabilitation Facility located in California."); *see also* ¶¶ 51, 83, 97 (similar)). Because Mission is not a Texas resident, Plaintiff has the burden of establishing a *prima facie* case for this Court's personal jurisdiction over Mission. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). A federal district court may exercise personal jurisdiction over a nonresident defendant if "(1) the forum state's long-arm statute confers personal jurisdiction over that

---

[5] Defendant Mission also moved to dismiss under Rule 12(b)(6) for failure to state a claim. (Dkt. 54). However, because the Court finds that it lacks personal jurisdiction over Defendant Mission, it will not discuss whether Plaintiff's complaint fails to state a claim as to Defendant Mission.

defendant; and (2) the exercise of personal jurisdiction comports with the Due Process Clause of the Fourteenth Amendment." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009), *cert. denied*, 562 U.S. 827 (2010). Because Texas's long-arm statute extends as far as constitutional due process allows, the two-step inquiry "collapses into one federal due process analysis." *Sangha v. Navig8 ShipManagement Private Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018).

Exercising personal jurisdiction over a nonresident defendant is compatible with due process when "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." *Walk Haydel & Associates, Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (cleaned up). There are two types of minimum contacts: those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction. *Lewis*, 252 F.3d at 358.

To establish general jurisdiction, the defendant's contacts with the forum state must be so continuous and systematic as to render it essentially "at home." *Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) ("doing business" in the state is not enough to constitute being at home). In contrast, specific jurisdiction is claim-specific and applies when a nonresident defendant "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Walk Haydel*, 517 F.3d at 243. The touchstone of specific jurisdiction analysis is "whether the defendant's conduct shows that it reasonably anticipates being haled into court." *McFadin*, 587 F.3d at 759 (cleaned up). Accordingly, specific jurisdiction "focuses on the relationship among the defendant, the forum, and the litigation." *Sangha*, 882 F.3d at 103.

The Court finds that it lacks general jurisdiction over Mission because it is neither incorporated in Texas nor does it have a principal place of business here. As a rehab facility "located

in California," (Compl., Dkt 26, at ¶¶ 25, 51, 83, 97), Mission is not "at home" in Texas, and the complaint alleges no systematic or continuous contacts with this forum that would properly subject it to general jurisdiction here. Likewise, the Court finds that it lacks specific jurisdiction over Mission. In support of her Section 1591 claim, Plaintiff contends that she attended rehab at the facility in California in 2019 for treatment for post-traumatic stress disorder, and that the facility, or its unidentified agent, "defrauded" her into "commercial sex acts of pornography." (*Id.* at ¶ 51). In support of her RICO claim, she repeats these allegations verbatim and adds that the facility committed a predicate act of "distribut[ing] the film via interstate commerce . . . ." (*Id.* at ¶ 83). As to negligence, Plaintiff contends the facility "had a duty not to interfere with Plaintiff's use and enjoyment of the leased premises," but that it "breached that duty and filmed pornography of [P]laintiff without her knowledge and distributed the film via interstate commerce when it knew or should have known Plaintiff was a victim of Sex Trafficking . . . ." (*Id.* at ¶ 97). These three paragraphs are the only allegations against Mission. There is no allegation that Mission purposefully directed any activities to Texas, or that any alleged conduct underlying Plaintiff's claims occurred here. Instead, taking Plaintiff's allegations as true, Plaintiff alleges that she attended rehab at Mission in California for Post-Traumatic Stress Disorder. (*Id.* at ¶¶ 25, 51, 83, 97). Therefore, the Court finds that specific jurisdiction is lacking. *See J. McIntyre Machinery, Ltd. V. Nicastro*, 564 U.S. 873, 881 (2011).

Because Plaintiff has not met her burden to establish a *prima facie* case for personal jurisdiction, the Court will dismiss all of Plaintiff's claims against Mission with prejudice. This dismissal is with prejudice, as there is nothing Plaintiff could add to her complaint to save her claims against Mission due to the Court's lack of personal jurisdiction over Mission.

### V. DEFENDANTS GERARD RUTH, RONNIE BALDO, MISSION, JANE MCFARLAND, SONNY MCFARLAND, TRACY WALTER ROGERS, MARY SANCHEZ, KELLY COLLENBORNE, RIVER OAKS, AND REED TECKENBROCK'S MOTIONS TO DISMISS UNDER RULE 12(b)(6)

Defendants Gerard Ruth, Ronnie Baldo, Mission, Jane McFarland, Sonny McFarland, Tracy Walter Rogers, Mary Sanchez, Kelly Collenborne, River Oaks, and Reed Teckenbrock have each moved to dismiss Plaintiff's claims against them pursuant to Rule 12(b)(6) for failure to state a claim.[6] For the reasons discussed below, the Court finds that Plaintiff does not state a plausible claim against these Defendants and finds that these claims should be dismissed with prejudice, as there is nothing Plaintiff could add to her complaint to save these claims.

#### A. Legal Standard: Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[6] The motions to dismiss were filed by Defendants Reed Teckenbrock, (Dkt. 33); River Oaks, (Dkt. 34); Gerard Ruth, (Dkt. 47); Mission, (Dkt. 54); Ronnie Baldo, (Dkt. 93); Jane McFarland, Sonny McFarland, Tracy Walter Rogers, and Mary Sanchez, (Dkt. 95); and Kelly Collenborne, (Dkt. 98).

defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### B. Discussion: The Complaint Fails to State an 18 U.S.C. § 1591 Claim against Any Defendant

18 U.S.C. § 1591 imposes criminal liability on "'[w]hoever knowingly… in or affecting interstate or foreign commerce… recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person… knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion… or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act…'" *United States v. Garcia-Gonzalez*, 714 F.3d 306, 310 (5th Cir. 2013) (quoting 18 U.S.C. § 1591(a)). The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3).

Section 1595(a) provides a concomitant civil remedy, allowing victims of sex trafficking to sue for damages "whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [§ 1591]." 18 U.S.C. § 1595(a). Thus, in order for Plaintiff to state a claim pursuant to 18 U.S.C. § 1591, she must allege facts plausibly showing that each defendant: "had knowledge (1) 'as to a benefit received from trafficking,' (2) 'as to assisting, supporting or facilitating trafficking,' and (3) 'that plaintiff was either a minor or subject to force,' threats of force, fraud, or coercion." *Doe v. Wyndham Hotels & Resorts, Inc.*, No. 4:19-CV-5016, 2021 U.S. Dist. LEXIS 64565, at *3–4 (S.D. Tex. 2021) (cleaned up).

The allegations set forth above do not sufficiently state a claim as to any Defendant. Simply put, Plaintiff has not adequately alleged that she was sex trafficked by any Defendant; rather, Plaintiff has simply made "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's Section 1591 claims against Defendants Gerard Ruth, Ronnie Baldo, Jane McFarland, Sonny McFarland, Tracy Walter Rogers, Mary Sanchez, Kelly Collenborne, and River Oaks must be dismissed.

### C. Discussion: The Complaint Fails to State a RICO Claim against Any Defendant

RICO makes it unlawful for any person to engage in various forms of "racketeering activity" set forth in 18 U.S.C. §1962(a)-(d). Section 1964, in turn, allows "[a]ny person injured in his business or property by reason of a violation of section 1962" to file a lawsuit in order to recover "threefold the damages he sustains and the cost of the suit[.]" 18 U.S.C. § 1964(c). Federal Rule of Civil Procedure 9(b)'s heightened pleading standard applies to "RICO claims resting on allegations of fraud." *Garcia v. Lion Mexico Consol., L.P.*, No. 5:15-CV-1116-DAE, 2017 WL 9479195, at *4 (W.D. Tex. Sept. 11, 2017). That heightened standard "requires that the plaintiff specifically allege how each act of fraud furthered the fraudulent scheme, and how each defendant participated in the fraud." *Barnard v. Bank of Am., N.A. (USA)*, No. CV H-05-2589, 2005 WL 8166961, at *1 (S.D. Tex. Nov. 15, 2005).

The allegations set forth above do not sufficiently state a claim as to any Defendant. Simply put, Plaintiff has not adequately met Rule 9(b)'s heightened pleading standard because she has not made specific allegations as to each allegedly fraudulent act and each Defendant's alleged participation in such acts; rather, Plaintiff has simply made "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." *Iqbal*, 556 U.S.

at 678. Accordingly, Plaintiff's RICO claims against Defendants Gerard Ruth, Ronnie Baldo, Jane McFarland, Sonny McFarland, Tracy Walter Rogers, Mary Sanchez, Kelly Collenborne, and River Oaks must be dismissed.

### D.  Discussion: The Complaint Fails to State a Negligence Claim against the Landlord Defendants or the Attorney Defendants

The elements of a negligence claim under Texas law are: (1) the existence of a duty owed by defendant to plaintiff; (2) breach of that duty; (3) proximate cause of plaintiff's damages by defendant's breach; and (4) damages. *Rodriguez-Escobar v. Goss*, 392 S.W.3d 109, 113 (Tex. 2013).

Plaintiff has not adequately alleged that any Defendant owed any duty to Plaintiff; rather, Plaintiff has simply made "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." *Iqbal*, 556 U.S. at 678. Accordingly, Plaintiff's negligence claims against Defendants Jane McFarland, Mary Sanchez, River Oaks, and Reed Teckenbrock must be dismissed.

### VI. DISMISSAL OF DEFENDANTS MARTHON GIMRE, OFFICER JOHN DOE, DAVID SHADLE *d/b/a* WITHAM APARTMENTS, JOE DOE, FOREST COOK, AND KEVIN WALTER FOR LACK OF SERVICE

#### A. Legal Standard: Rule 4(m)

"If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).

#### B. Discussion: Plaintiff Failed to Serve Defendants

Plaintiff first filed her complaint on December 1, 2022, (Dkt. 1), and then filed successive amended complaints on December 5, December 7, and December 12, 2022, (Dkts. 3, 5, 7). Under Rule 4(m), a defendant ordinarily should be "served within 90 days after the complaint is filed," meaning that Plaintiff's deadline to effectuate service of her Third Amended Complaint was March

12, 2023. Fed. R. Civ. P. 4(m). On February 28, 2023, Plaintiff moved for a 30-day extension of time to serve defendants, until March 31, 2023. (Dkt. 24). The Court granted Plaintiff's motion by text order on March 14, 2023 and ordered that Plaintiff must "effectuate service on Defendants on or before March 31, 2023."

On March 6, 2023, Plaintiff filed her Fourth Amended Complaint, (Compl., Dkt. 26), the operative complaint in this case. To date, however, there is no indication that Plaintiff has served Defendants Marthon Gimre, Officer John Doe, David Shadle d/b/a Witham Apartments, Joe Doe, Forest Cook, and Kevin Walter with the complaint and summons for any of her several complaints. However, as detailed above, (*see supra* p. 10), Plaintiff filed a number of motions regarding the time and modality of service on some of the Defendants in this case, some of which the Court granted. However, Plaintiff filed no such motions regarding Defendants Marthon Gimre, Officer John Doe, David Shadle d/b/a Witham Apartments, Joe Doe, and Kevin Walter. Furthermore, Plaintiff's motions regarding service on Defendant Forest Cook were denied.[7]

Well over 90 days have passed since Plaintiff filed her complaint. Under Rule 4(m), the district court has two choices when plaintiff fails to serve defendant within a 90-day period: either "dismiss the action without prejudice . . . or order that service be made within a specified time." Fed. R. Civ. P. 4(m). Accordingly, the Court *sua sponte* dismisses without prejudice Defendants Marthon Gimre, Officer John Doe, David Shadle d/b/a Witham Apartments, Joe Doe, Forest Cook, and Kevin Walter under Rule 4(m) for failure to timely serve these Defendants.

---

[7] On June 2, 2023, Plaintiff moved for alternate service on Defendant Forest Cook. (Dkt. 78). On August 18, 2023, the Court denied Plaintiff's motion for alternate service. (Dkt. 110).

## VII. DISMISSAL OF DEFENDANTS GLYN GODWIN, CHARLES GARDNER, JOSEPH BRUNO, SR., AND KINGS CROSS VENTURES *d/b/a* BIRRAPORETTI'S INC.

### A. Legal Standard: Frivolousness

District courts have the inherent authority to screen a pleading for frivolousness and may dismiss, *sua sponte*, claims that are "totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion" because such claims lack "the "legal plausibility necessary to invoke federal subject matter jurisdiction." *Apple v. Glenn*, 183 F.3d 477, 479–80 (6th Cir. 1999) (*per curiam*) (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974); *see also Dilworth v. Dallas Cty. Cmty. Coll. Dist.*, 81 F.3d 616, 617 (5th Cir. 1996)).

The Fifth Circuit has recently affirmed that "[s]ome claims are 'so insubstantial, implausible, . . . or otherwise completely devoid of merit as not to involve a federal controversy.'" *Atakapa Indian de Creole Nation v. Louisiana*, 943 F.3d 1004, 1006 (5th Cir. 2019) (quoting *Oneida Indian Nation of N.Y. v. Oneida Cty.*, 414 U.S. 661, 666 (1974)). Indeed, "[f]ederal courts lack power to entertain these 'wholly insubstantial and frivolous' claims." *Id.* (quoting *Southpark Square Ltd. v. City of Jackson, Miss.*, 565 F.2d 338, 343–44 (5th Cir. 1977)). "Determining whether a claim is 'wholly insubstantial and frivolous' requires asking whether it is 'obviously without merit' or whether the claim's 'unsoundness so clearly results from the previous decisions of [higher courts] as to foreclose the subject.'" *Id.* (quoting *Southpark Square*, 565 F.2d at 342).

### B. Discussion: Plaintiff's Claims against Defendants Glyn Godwin, Charles Gardner, Joseph Bruno, and Birraporetti's Should Be Dismissed as Frivolous

Defendant Bruno moved to dismiss the Third Amended Complaint, (Dkt. 14), which the Court mooted via text order following Plaintiff's Fourth Amended Complaint. Defendant Glyn Godwin answered the Second Amended Complaint, stating that he "never sold his daughter into servitude in any manner," "has never subjected his daughter to intentional infliction of emotional

20

distress," "never conducted any surveillance of his daughter," and "never contracted for the exploitation of his daughter." (Dkt. 10, at 3). Defendant Birraporetti's answered the Fourth Amended Complaint, stating that it:

> denies ever having done business as Birraporetti's Restaurants, Inc.… and denies having operated in the state of Louisiana where Plaintiff alleges bad actions took place. In fact, the Texas corporation Kings Cross Ventures LLC named in the instant lawsuit was formed on January 28, 2010, two decades after Plaintiff alleges that she was contracted into commercial sex acts at a Louisiana-area restaurant.

(Dkt. 41, at 2). Lastly, Plaintiff has represented to the Court that Defendant Gardner was served on May 14, 2023, (Dkt. 76), but he has not filed an answer.

While these four Defendants did not move to dismiss Plaintiff's Fourth Amended Complaint, the Court finds that *sua sponte* dismissal of Plaintiff's claims against these four Defendants is appropriate here. The Court finds that Plaintiff's claims are insubstantial and frivolous. Plaintiff has failed to adequately plead her case against these four Defendants; as just one example, the extent of her claims against Birraporetti's is a single sentence repeated twice: Plaintiff alleges that "Defendant Kings Cross Ventures d/b/a Birraporetti's, Inc., is a restaurant now owned in part by Charles Gardner and the location where the contract for surveillance took place." (*Id.* at ¶¶ 32, 64). Plaintiff's choice to proceed with this lawsuit harms both the Court and other litigants:

> Federal courts are proper forums for the resolution of serious and substantial federal claims. They are frequently the last, and sometimes the only, resort for those who are oppressed by the denial of the rights given them by the Constitution and laws of the United States. Fulfilling this mission and the other jurisdiction conferred by acts of Congress has imposed on the federal courts a work load that taxes their capacity. Each litigant who improperly seeks federal judicial relief for a petty claim forces other litigants with more serious claims to await a day in court. When litigants improperly invoke the aid of a federal court to redress what is patently a trifling claim, the district court should not attempt to ascertain who was right or who was wrong in provoking the quarrel but should dispatch the matter quickly.

*Raymon v. Alvord Indep. Sch. Dist.*, 639 F.2d 257, 257 (5th Cir. 1981).

Because the Court finds that Plaintiff's claims against these four Defendants are frivolous, the Court invokes its inherent authority and dismisses with prejudice Plaintiff's claims against Defendants Godwin, Gardner, Bruno, and Birraporetti's as frivolous.

## VIII. DEFENDANT HABITAT'S MOTION FOR SUMMARY JUDGMENT

Habitat moves for summary judgment under Rule 56 as to Plaintiff's claims against it. (Dkt. 75). Plaintiff responded to the motion for summary judgment, (Dkt. 77), and Habitat replied in support of its motion, (Dkt. 91). In her response, Plaintiff did not object to Habitat's motion for summary judgment as being premature; accordingly, the Court finds it can consider this motion at this time.

### A. Legal Standard: Rule 56

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### B. Habitat Is Entitled to Summary Judgment

Plaintiff's allegations against Habitat consist solely of the following paragraph, repeated three times throughout her complaint:

> In mid-2018, Plaintiff called Defendant HI One Austin LLC d/b/a Habitat Suites, Inc., which implied a warranty of habitability and rented a room to Plaintiff on the first floor of the property. Holes appeared in the ceiling which provided access for the procurement of video of Plaintiff. Plaintiff reported the incident and explained her situation to hotel staff and posted pictures of the holes on social media. Nothing was done about it. Plaintiff filled the holes with toothpaste.

(Compl. at ¶¶ 45, 77, 94). On this basis, Plaintiff asserts claims against Habitat for: (1) "defraud[ing] Plaintiff into commercial sex acts of pornography" in violation of 18 U.S.C. § 1591; (2)

civil RICO liability based on predicate acts of 18 U.S.C. § 1591 violations and wire fraud; and (3)

negligence. (*Id.* at ¶¶ 45, 77, 94).

In its motion for summary judgment, Habitat asserts that "[t]here is no genuine dispute of

any material fact." (Dkt. 75, at 2–3). Habitat provides an affidavit from Donald Walls, who was the

General Manager of Habitat during the relevant time period. (Dkt. 75-1). This affidavit provides

that:

> [T]here was approximately eighteen inches of space containing insulation between the first story ceiling and the second story flooring. It would be impossible for an individual to access that space without major construction work that would entail removing a section of the ceiling on the first story unit, or the floor on the second story unit, or an external wall. No such construction occurred during the years 2016 or 2018. Additionally, no person could physically be in that small space without the first story ceiling collapsing. The only way visual access through the ceiling could have been achieved would be through a hole drilled from the flooring above, which would have required the second story flooring to be either partially removed or significantly damaged by the drilling of holes using a drill that would have required almost two feet in length to penetrate both the second story floor, the insulated space between floors, and the first story ceiling to create such a hole … [Additionally,] daily maid service includes inspections of the rooms and any holes in a floor or ceiling would have been noticed and reported, and none were…
>
> [T]he staff at Defendant Habitat had no reason to suspect that Plaintiff was a victim of trafficking, and if they had they would have reported their suspicions to hotel management and the proper legal authorities, and no such suspicions were reported … [A]t no time did anyone associated with Defendant Habitat authorize, undertake or be aware of the creation or distribution of any images of Plaintiff, pornographic or otherwise, other than through a security camera that may have been present at the check-in desk.

(Dkt. 75, at 4–5 (citing to Dkt. 75-1)). Habitat also "contends that Plaintiff cannot produce

admissible evidence that would give rise to liability on her claims against Defendant Habitat because

the events alleged as to Defendant Habitat never occurred." (Dkt. 75, at 6). Once the moving party

has made an initial showing that there is no evidence to support the nonmoving party's case, the

party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Accordingly, Habitat has met its burden of raising a genuine issue of material fact as to the veracity of Plaintiff's claims, which Plaintiff has not refuted in her response to the motion. (Dkt. 77). Instead, Plaintiff merely restates her allegations in the complaint, states that she "has witnesses who will attest to Plaintiff's reputation as to the surveillance" and that "Mr. Teckenbrock's email confirms the surveillance," and that "Mr. Walls's affidavit is deficient" and "speculates." (*Id.* at 2–4). Plaintiff then proceeds to engage in speculation of her own, providing alternative theories as to how surveillance allegedly could have occurred at Habitat. (*Id.* at 4–5). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Plaintiff provides no evidence to dispute Habitat's argument as to why it is entitled to summary judgment.

Even believing Plaintiff's evidence and drawing all inferences in her favor, the Court finds that no dispute as to any material fact exists. Simply put, Plaintiff has not met her burden as the nonmovant. Rule 56 does not impose a duty on the Court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

Ultimately, Plaintiff did not object to Habitat's motion for summary judgment as being premature, nor has she provided any evidence to carry her burden as the nonmoving party. Accordingly, Habitat is entitled to summary judgment as to all of Plaintiff's claims against it.

## IX. LEAVE TO AMEND

Next, the Court will address Plaintiff's request for leave to file a Fifth Amended Complaint, (Dkt. 82), and a Sixth Amended Complaint, (Dkt. 109). Plaintiff's request for leave to file a Fifth Amended Complaint is mooted by her subsequent request for leave to file a Sixth Amended Complaint. Therefore, the Court will only consider whether to grant Plaintiff's motion for leave to file a Sixth Amended Complaint, (Dkt. 109).

### A. Legal Standard: Rule 15(a)

The Federal Rules of Civil Procedure permit a party to amend its pleading "once as a matter of course," but afterwards "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(1)–(2). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Rule 15(a) "requires the trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002). But leave to amend "is by no means automatic." *Davis v. United States*, 961 F.2d 53, 57 (5th Cir. 1991). Even this lenient rule has limits. A district court may deny leave to amend if it has a "substantial reason" to do so. *Lyn–Lea Travel Corp.*, 283 F.3d at 286. Permissible reasons for denying a motion for leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Thomas v. Chevron U.S.A., Incorporated*, 832 F.3d 586, 591 (5th Cir. 2016) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

Generally, a *pro se* litigant should be offered an opportunity to amend her complaint before it is dismissed. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Granting leave to amend is not required, however, if the plaintiff has already pleaded his "best case." *Id.* at 768 (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). If a *pro se* party does not explain what additional material facts she "would have added or how he could have overcome the deficiencies found by the district court if he had been granted an opportunity to amend," then a court need not grant leave to amend. *Id.* (quoting *Goldsmith v. Hood Cnty. Jail*, 299 F. App'x 422, 423 (5th Cir. 2008) (per curiam) (unpublished)). Furthermore, as noted above, while a plaintiff proceeding *pro se* is normally entitled to liberal construction of her submissions in federal court, this principle does not apply when the *pro se* plaintiff is a licensed attorney, as here.

## B. Discussion: Plaintiff's Requests for Leave to Amend Are Denied

Here, Plaintiff has already had five chances to make her "best case." As noted earlier, Plaintiff has already amended her complaint four times, most recently in response to some Defendants' motions to dismiss. (Dkts. 11, 14). Plaintiff states that she seeks "to add a defendant and demonstrate continuity of enterprise required in a RICO Claim" [in response to Habitat's motion for summary judgment, (Dkt. 75)] and "to demonstrate Plaintiff is still a target of internet hacking which affects her employment." (Dkt. 109, at 1–2). Plaintiff has provided no explanation for her failure to cure deficiencies in her previous amendments. Additionally, the Court finds that granting Plaintiff leave to file a Sixth Amended Complaint would cause prejudice to Defendants, who have already spent considerable time and expense briefing multiple motions regarding claims that this Court has found to lack any legal merit. Furthermore, a district court need not grant a futile motion to amend. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872 (5th Cir. 2000). Futility is determined under Rule 12(b)(6) standards; an amendment is considered futile if it would fail to state

a claim upon which relief could be granted. *Id.* A comparison of Plaintiff's Fourth Amended

Complaint to her proposed Sixth Amended Complaint reveals that Plaintiff has not made any

substantive amendments or added any non-conclusory allegations that would bolster the validity of

her claims. There is nothing Plaintiff could add that would save her claims, and thus, it would be

futile to grant leave to amend. *Legate v. Livingston*, 822 F.3d 207, 211 (5th Cir. 2016). Accordingly, the

Court finds that further amendments would be futile and denies Plaintiff's motion for leave to file a

Sixth Amended Complaint.

## X. PLAINTIFF'S MOTION FOR SANCTIONS AGAINST DEFENDANT TECKENBROCK

Finally, the Court will address Plaintiff's motion for sanctions against Defendant

Teckenbrock. (Dkt. 57).[8] In her motion, Plaintiff states:

> Plaintiff requests Mr. Teckenbrock be sanctioned for bad faith due to
> his intentional misinterpretation of the Complaint and allow Plaintiff
> to collect attorney fees of $1500.00 to prepare this motion and protect
> her rights. Defendant should be ordered to pay reasonable attorney's
> fees in the amount of $1500.00, and a judgment should be rendered in
> favor of Plaintiff and against Reed Teckenbrock and he be ordered to
> pay it directly to Heather Elizabeth Godwin within 30 days of Order
> of the Court.

(Dkt. 57, at 4). Plaintiff does not specify the rule under which she moves for sanctions, nor does she

provide more information than the above paragraph.

### A. Legal Standard

The Court construes Plaintiff's motion for sanctions as being brought under Federal Rule of

Civil Procedure 11. Rule 11 of the Federal Rules of Civil Procedure authorizes district courts to

impose an "appropriate sanction" for various forms of attorney misconduct "on any attorney, law

---

[8] Plaintiff has also moved to strike Defendant Teckenbrock's reply. (Dkt. 57). The Court moots Plaintiff's motion to strike the reply, as the Court has found that Teckenbrock should be dismissed from the case. (*See supra* pp. 15–18).

firm, or party that violated the rule or is responsible for the violation." Fed R. Civ. P. 11(c)(1). The

Court may impose sanctions under Rule 11 if: (1) a document has been presented for an improper

purpose; (2) the claims or defenses of the signer are not supported by existing law or by a good-faith

requirement for an extension or change in existing law; (3) the allegations and other factual

contentions lack evidentiary support or are unlikely to do so after a reasonable opportunity for

investigation; or (4) the denials of factual contentions lack evidentiary support or are unlikely to do

so after a reasonable opportunity for investigation. Fed. R. Civ. P. 11(b)(1)–(4). In determining

whether to impose sanction under Rule 11, the Court should consider:

> Whether the improper conduct was willful, or negligent; whether it was
> part of a pattern of activity, or an isolated event; whether it infected
> the entire pleading, or only one particular count or defense; whether
> the person has engaged in similar conduct in other litigation; whether
> it was intended to injure; what effect it had on the litigation process in
> time or expense; whether the responsible person is trained in the law;
> what amount, given the financial resources of the responsible person,
> is needed to deter that person from repetition in the same case; what
> amount is needed to deter similar activity by other litigants…

Fed. R. Civ. P. 11 Advisory Committee's Notes to 1993 Amendments.

## B. Discussion

The Court finds that the requirements of Rule 11 are not met here. Plaintiff asks the Court

to impose sanctions on Defendant Teckenbrock "for bad faith due to his intentional

misinterpretation of the Complaint." (Dkt. 57, at 4). Courts should consider whether an action was

willful or negligent, whether it was an isolated event, and what effect it had upon the litigation. Fed.

R. Civ. P. 11 advisory committee's note to 1993 amendment. Here, there is no evidence that

Defendant Teckenbrock intentionally set forth an incorrect argument or acted in bad faith in any

manner. He merely defended himself against claims that the Court has just found to lack any legal

merit—that he was negligent for allegedly telling Plaintiff that he didn't think she had a cognizable

claim and therefore not contacting her again. (*See* Compl., Dkt. 26, at ¶ 99; *see also supra* pp. 15–18). The imposition of sanctions against Defendant Teckenbrock is not warranted here. Accordingly, Plaintiff's motion for sanctions against Defendant Teckenbrock is denied.

## XI. CONCLUSION

Accordingly, for the reasons set forth above, **IT IS ORDERED** that:

- Plaintiff's motion to extend time to serve Defendant Gardner, (Dkt. 56), is **MOOTED**.

- Plaintiff's motion to extend the time to serve Defendants Jane and Sonny McFarland, (Dkt. 88), is **MOOTED**.

- Plaintiff's motion to strike Defendant Teckenbrock's reply, (Dkt. 57), is **MOOTED**.

- The seven motions to dismiss, (Dkts. 33, 34, 47, 54, 93, 95, and 98), are **GRANTED**. Defendants Teckenbrock, River Oaks, Mission, Baldo, Jane McFarland, Sonny McFarland, Rogers, Sanchez, and Collenborne are **DISMISSED WITH PREJUDICE**.

- Plaintiff's motion for sanctions against Defendant Teckenbrock, (Dkt. 57), is **DENIED**.

- Defendants Marthon Gimre, Officer John Doe, David Shadle d/b/a Witham Apartments, Joe Doe, Forest Cook, and Kevin Walter are **DISMISSED WITHOUT PREJUDICE**.

- The Court also *sua sponte* **DISMISSES WITH PREJUDICE** Plaintiff's claims against Defendants Godwin, Gardner, Bruno, and Birraporetti's as frivolous.

- Habitat's motion for summary judgment, (Dkt. 75), is **GRANTED**. The claims against Habitat are **DISMISSED WITH PREJUDICE**.

- Plaintiff's motion for leave to file a Fifth Amended Complaint, (Dkt. 82), is **MOOTED**.

- Plaintiff's motion for leave to file a Sixth Amended Complaint, (Dkt. 109), is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is warned that filing or pursuing any further frivolous lawsuits[9] may result in (1) the imposition of court costs under 28 U.S.C. § 1915(f); (2) the

---

[9] As Plaintiff's related state court lawsuit was removed to this Court before the date of this order, (*see Godwin v. CFP River Oaks Austin, L.L.C. et al.*, Civil Case No. 1:23-cv-1566-DII, removed Dec. 27, 2023), the Court does not consider its warning to apply to this already-filed case.

imposition of significant monetary sanctions under Fed. R. Civ. P. 11; (3) the imposition of an order

barring her from filing any lawsuits in this Court without first obtaining the permission from a

District Judge of this Court or a Circuit Judge of the Fifth Circuit; or (4) the imposition of an order

imposing some combination of these sanctions. Plaintiff should be well aware of the pleading

standards in federal court. The complaint falls below that standard, and as a result, this Court has

spent considerable time reviewing the complaint and pending motions.

As nothing remains to resolve, **IT IS FURTHER ORDERED** that this case is **CLOSED**.

**SIGNED** on February 5, 2024.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE